# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47488

ROCKNE LEE HOLLINGSWORTH and
DEBORAH HOLLINGSWORTH,

    Plaintiffs-Appellants,

v.

HAROLD K. THOMPSON, M.D., and
WALTER KNOX COMMUNITY HOSPITAL,
INC., dba VALOR HEALTH,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, September 2020 Term**

**Opinion filed: December 23, 2020**

Melanie Gagnepain, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Gem County. George A. Southworth, District Judge.

The order of the district court granting summary judgment to Respondents is reversed and remanded.

Hepworth Holzer, LLP, Boise, for Appellants. Kurt Holzer argued.

Tolman Brizee & Cannon, PC, Twin Falls, for Respondents. Nicole Cannon argued.

---

MOELLER, Justice.

This is an appeal from a summary judgment ruling in a medical malpractice case. Rockne Lee Hollingsworth[1] brought a malpractice claim against a local hospital and doctor in Gem County district court. The district court found Hollingsworth lacked due diligence in failing to determine the hospital was a political subdivision, subject to the notice requirements of the Idaho Tort Claims Act ("ITCA"), and granted summary judgment for Respondents. Hollingsworth appealed, arguing the corporate filings made by the county-owned hospital created the false impression the hospital was a private corporation. Respondents contend the hospital and corporate entity, both owned by Gem County, are both subject to the ITCA because they are

---

[1] Although both Mr. and Mrs. Hollingsworth brought the lawsuit, we will refer to Appellants in the singular for ease of reference.

actually one and the same. For the reasons set forth below, we reverse the district court's ruling and remand this matter for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 29, 2017, Rockne Lee Hollingsworth sought medical help for persistent chest pain at the Valor Health emergency room in Emmett, Gem County, Idaho. Harold K. Thompson, M.D., a Valor Health employee, conducted tests and discharged Hollingsworth several hours later. *Id*. On October 5, Hollingsworth returned to the emergency room again with chest pain; however, this time he was transported to St. Alphonsus Regional Medical Center in Nampa where another physician diagnosed Hollingsworth with significant heart damage from "a delayed evaluation for what appears to have been an acute anterior wall myocardial infarction sustained more than a week [earlier]".

On February 21, 2018, Hollingsworth submitted an "Idaho State Board of Medicine Application and Claim for Medical Malpractice Prelitigation Hearing" ("prelitigation hearing application") to the Idaho State Board of Medicine, contending Dr. Thompson breached the standard of care for failing to recognize the heart damage during the examination on September 29, 2017. The prelitigation hearing application was forwarded to Valor Health's CEO and its counsel. After obtaining a positive decision from the prelitigation screening panel,[2] Hollingsworth filed a complaint in district court against Dr. Thompson, and Walter Knox Memorial Hospital, Inc., d/b/a Valor Health on August 14, 2018. On April 23, 2019, he amended the complaint to change the hospital's name to Walter Knox Community Hospital, Inc., d/b/a Valor Health ("Respondents"). It is undisputed Hollingsworth did not present and file a notice of tort claim with the Gem County clerk within 180 days of his medical visit, as required under Section 6-906 of the ITCA to bring a claim against a political subdivision or its employee.

This appeal focuses on the governmental status of the corporate entity created by the hospital and whether Respondents should have determined that it fell under the ITCA's notice requirements. Walter Knox Memorial Hospital was built after Gem County voters approved a special bond in 1961 for the construction of a county hospital. In 2006, the Idaho Supreme Court ruled that Article VIII, Section 3 of the Idaho Constitution bars a public entity from borrowing money in excess of its income and revenue for that year without first obtaining public approval

---

[2] Respondents dispute this. They argue that the panel concluded the treatment provided by Dr. Thompson was within the standard of care and that it faulted Hollingsworth for not following discharge instructions to follow up with his physician. Unfortunately, the panel's advisory decision is not in the record.

2

by a supermajority vote, unless the expenditure was for an "ordinary and necessary" expense. *City of Boise v. Frazier*, 143 Idaho 1, 2-3, 137 P.3d 388, 389-90 (2006). This ruling negatively impacted the hospital's ability to fund itself. In order to avoid the requirements of the *Frazier* decision, the hospital created a separate, nonprofit corporation named Walter Knox *Community* Hospital, Inc., with the intention that the existing Walter Knox *Memorial* Hospital would sell or lease its assets to the newly created nonprofit corporation, thereby allowing it, as a nonpublic entity, to obtain a loan without having to pass a bond.

Walter Knox Community Hospital, Inc., filed articles of incorporation as a nonprofit corporation with the Idaho Secretary of State in 2009. The corporation's purposes listed in the articles include providing care for those in Gem County and enhancing the quality and availability of medical care in Gem County. That same year, the corporation filed a Certificate of Assumed Business Name indicating Walter Knox *Community* Hospital, Inc., was doing business as Walter Knox *Memorial* Hospital, which was then the hospital's public name.

In 2010, the Idaho Legislature adopted an amendment to Article VIII, Section 3C of the Idaho Constitution, which Idaho citizens ratified that same year, to allow public hospitals to incur long-term indebtedness to meet health care needs, thereby exempting such hospitals from the ruling in *Frazier*. Except for a brief lapse in 2015, Walter Knox Community Hospital, Inc., kept its filings current with the Secretary of State. In 2015, after the hospital changed its name to Valor Health, Walter Knox Community Hospital, Inc., filed a Certificate of Assumed Business Name with the Idaho Secretary of State, indicating Valor Health was a d/b/a of the corporation. Hollingsworth's medical records show Valor Health as his medical care provider. Today, Walter Knox Community Hospital, Inc.'s corporate status with the Secretary of State is listed as "Inactive-Dissolved (Administrative)."

Respondents filed a Motion for Summary Judgment on May 21, 2019, arguing Hollingsworth's claim was time-barred because he failed to comply with the notice requirements of the ITCA. The district court granted Respondents' summary judgment motion without discussing the corporate entity's filings or their legal effect. It found that there was no genuine issue of material fact concerning Valor Health's status as a political subdivision under the ITCA and Dr. Thompson's status as a public employee. Further, the district court found Hollingsworth's attempt to ascertain Valor Health's governmental status did not satisfy due

3

diligence because he only searched the associated business filings with the Idaho Secretary of State and did not inquire further about the hospital.

Notably, Respondents asserted before the district court that Walter Knox Community Hospital, Inc., the corporate entity, had never been the hospital in Gem County nor had anything to do with patient care. Respondents maintained Hollingsworth had named the wrong defendant when he relied on the Secretary of State filings to identify the corporate entity as the party to the suit. However, on appeal, Respondents have attempted to "clarify" their position, stating:

> Defendants understand that certain aspects of the record are conflicting and regret any inconvenience caused to the Court. In order to clarify any confusion, Defendants hereby confirm the facts clearly established by the record, that Walter Knox Community Hospital, Inc.[,] provided patient care and preserved and enhanced the quality and availability of medical care in Gem County, Idaho, as specified in the Articles of Incorporation of Walter Knox Community Hospital, Inc. ... Therefore[,] Plaintiffs correctly identified Walter Knox Community Hospital, Inc.[,] d/b/a Valor Health as a defendant in this case.

(Citations to the record omitted).

## II. STANDARD OF REVIEW

"When reviewing an order for summary judgment, the standard of review used by this Court is the same standard used by the district court in ruling on the motion." *Van v. Portneuf Med. Ctr.,* 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Marek v. Hecla, Ltd.,* 161 Idaho 211, 220, 384 P.3d 975, 984 (2016); *see also Houpt v. Wells Fargo Bank, Nat. Ass'n,* 160 Idaho 181, 186, 370 P.3d 384, 389 (2016) ("If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate."). "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor." *Robison v. Bateman-Hall, Inc.,* 139 Idaho 207, 209, 76 P.3d 951, 953 (2003).

## III. ANALYSIS

### A. Hollingsworth exercised due diligence in ascertaining whether the ITCA applied to Valor Health.

4

The parties now agree the proper defendants are Dr. Thompson and Walter Knox Community Hospital, Inc., d/b/a Valor Health. Valor Health is the assumed business name of the nonprofit corporation Walter Knox Community Hospital, Inc. Yet, prior to this appeal, Respondents maintained that Hollingsworth incorrectly named the corporate entity in the suit because the corporate entity is *not* the county hospital, Valor Health. Now on appeal, Respondents seek to "clarify any confusion" and acknowledge the corporate entity *is* a correctly named party. The filing of the 2009 Articles of Incorporation, they now assert, made "Walter Knox Community Hospital, Inc.," the county hospital's official business name.

The question before this Court is whether the district court erred when it found that Hollingsworth lacked due diligence in determining whether the ITCA applied to his claims against the hospital and its employee. To answer this, we must consider (1) whether the corporate filings associated with Valor Health gave Hollingsworth sufficient notice that it was a governmental entity to which the ITCA applied, and (2) whether due diligence required Hollingsworth to look beyond the corporate filings to ascertain Valor Health's governmental status.

1. **The corporate filings with the Idaho Secretary of State did not indicate that Valor Health is a governmental entity.**

With some exceptions, the ITCA makes governmental entities, including county hospitals, liable for money damages for negligent conduct related to its employees' actions. I.C. §§ 6-902(2), 6-903(1). Where the ITCA applies, the claim must "be presented to and filed with the clerk or secretary of the political subdivision" within 180 days "from the date the claim arose or reasonably should have been discovered, whichever is later." I.C. § 6-906. This Court has found that compliance with the ITCA's notification requirements is "a mandatory condition precedent to suit, the failure of which is fatal to a claim, no matter how legitimate." *Cobbley v. City of Challis*, 138 Idaho 154, 157, 59 P.3d 959, 962 (2002).

Here, Hollingsworth admittedly did not satisfy the ITCA's notice requirement by presenting its claim to Gem County within 180 days of the alleged malpractice. Respondents argue this must be fatal to Hollingsworth's claim because the hospital at issue is owned by Gem County, thereby bringing the action under the provisions of the ITCA. However, the nature of the corporate filings associated with the hospital have complicated the issue. While it is true that the ITCA clearly applies to a county-owned hospital, the ITCA does not necessarily apply to a separate, private corporation created by that hospital. Therefore, to assess Hollingsworth's due

diligence, this Court must first determine if the corporate filings associated with Valor Health put Hollingsworth on notice the hospital was operating as a county-owned hospital as Respondents claim, or if those filings indicate a nongovernmental corporation.

Prior to this appeal, Respondents averred that the corporation was not the hospital and, in support, described the corporate entity's separate origin. Respondents detailed how they created Walter Knox Community Hospital, Inc., to work around the Idaho Supreme Court's ruling in *Frazier*. Brad Turpen, Valor Health's CEO, testified that the hospital "explored the possibility of creating a completely separate non-profit organization whereby Walter Knox *Memorial* Hospital, Inc.[,] could sell or lease assets to said non-profit organization, which could thereby more easily obtain a loan through said non-profit organization." Walter Knox *Community* Hospital, Inc., became that separate entity. The IRS approved the nonprofit corporation a year later, but by then Idaho law had changed again, and the corporation was never used as originally envisioned. Nonetheless, Walter Knox Community Hospital, Inc., continued to exist on paper even though, as Turpen insisted, it had "never been a state licensed hospital established by Gem County."

Corporations are generally regarded as separate legal entities, meaning any person or entity who controls the corporation is not personally liable for the corporation's acts or debts. *See Lunneborg v. My Fun Life*, 163 Idaho 856, 867, 421 P.3d 187, 198 (2018). According to the Idaho Nonprofit Corporation Act, Idaho Code sections 30-30-101 *et seq*, a nonprofit corporation comes into existence by filing articles of incorporation with the Secretary of State. I.C. § 30-30-203. The term "entity" is defined in the Idaho Uniform Business Organizations Code, Idaho Code sections 20-21-101 *et seq*, as including a nonprofit corporation, section 30-21-102(11)(A)(ii), but it specifically excludes a "government or a governmental subdivision, agency or instrumentality." I.C. § 30-21-102(11)(B)(v). Importantly, the ITCA applies only to governmental entities and specifically includes political subdivisions, such as county hospitals. I.C. § 6-902(2).

Regarding Walter Knox Community Hospital, Inc., as a nongovernmental corporate entity is entirely consistent with Respondents' original explanation: that the hospital wanted to make a separate, non-public entity to avoid the Idaho Constitution's debt limitations—in other words, a nongovernmental entity. This would explain why the terms of the Articles of Incorporation for Walter Knox Community Hospital, Inc., are consistent with the legal organization of a private nonprofit corporation, rather than a county-owned hospital. Yet,

6

regarding the entity as nongovernmental is inconsistent with Respondents' recent concession that Walter Knox Community Hospital, Inc., is the same thing as the hospital, which Gem County owns.

Idaho law requires governmental control of county hospital boards, mandating they be both created by *and comprised of* county commissioners. I.C. §§ 31-3602, –3603. Contrast this to nonprofit corporations, which have no such restrictions on board members. I.C. § 30-30-205. Here, the Articles of Incorporation for Walter Knox Community Hospital, Inc., require only that board members be Gem County citizens; no provision requires control by the county government, as it should for a county hospital. Additionally, the Articles of Incorporation for Walter Knox Community Hospital, Inc., show its directors are not necessarily Gem County commissioners, but instead may include any Gem County resident elected by other board members.

Furthermore, Respondents' argument that Walter Knox Community Hospital, Inc., is only the official business name for Valor Health is not reasonable under state law. A person or entity who wishes to conduct business under another name may do so by filing a Certificate of Assumed Business Name with the Secretary of State. I.C. § 30-21-807. However, this "does not create an entity separate from the person doing business under the assumed business name." I.C. § 30-21-807(c). If one wants to conduct business under another name, filing a Certificate of Assumed Business Name is the legal pathway to do just that without the unnecessary complication of creating a separate corporate entity, as Respondents did here.

For the above reasons, we hold the corporate filings Respondents submitted to the Secretary of State regarding Walter Knox Community Hospital, Inc., represented to the public that it was a private, nonprofit corporation, to which the ITCA did not apply. Based on the corporate filings, Hollingsworth could not have determined that the hospital was owned by Gem County or that the ITCA applied to it.

### 2. Due diligence did not require that Hollingsworth look beyond the corporate filings.

Next, we must determine whether due diligence required Hollingsworth to look beyond corporate filings with the Secretary of State, which indicated the hospital was nongovernmental, to find whether the ITCA applied.

According to the Idaho Uniform Business Organization Code, any entity conducting business under a name other than its actual name is required to file a d/b/a certificate with the

7

Secretary of State. I.C. § 30-21-805. Noncompliance with this statute occurs when someone files "false, misleading or incomplete information in a Certificate of Assumed Business Name" or fails to file altogether. I.C. § 30-21-810.

In previous cases, this Court has examined how noncompliance with the assumed business name statute affects statutes of limitations. The Idaho Code does not list tolling a statute of limitations as a consequence of noncompliance. However, we have suggested a late-named party might be prevented from asserting a statute of limitations defense if a plaintiff failed to identify that party due to seriously misleading, noncompliant corporate filings. *Ketterling v. Burger King Corp.*, 152 Idaho 555, 558–559, 272 P.3d 527, 530–531 (citing *Winn v. Campbell*, 145 Idaho 727, 731, 184 P.3d 852, 856 (2008)). On the other hand, we have held that a statute of limitations' general purpose is "to protect defendants against stale or unduly delayed claims." *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227, 132 S. Ct. 1414, 1420, 182 L. Ed. 2d 446 (2012). In that context, this Court has found a simple failure to file a d/b/a certificate did not qualify as seriously misleading where the party who failed to file could have been identified through other simple inquiries

For example, in *Winn*, a plaintiff fell at a motel. 145 Idaho at 728, 184 P.3d at 853. Winn sued Wayne Campbell, d/b/a Home Hotel and Motel, whom she thought operated the motel, but she later discovered it was operated by a corporation, Campbell, Inc. *Id.* Then it turned out the motel was actually Tumbling Waters Motel, which Campbell, Inc. also operated. *Id.* After the statute of limitations had passed, Winn moved to substitute Campbell, Inc., as the defendant. *Id.* at 729, 184 P.3d at 854. Winn argued the statute should be tolled because Campbell, Inc., had failed to file a Certificate of Assumed Business Name for Tumbling Waters Motel. *Id.* at 731, 184 P. 3d at 856. This Court disagreed. *Id.* Winn's problem, we concluded, was she had failed to take the simple step to discover the name of the motel where she fell. *Id.* Had she sued Tumbling Waters Motel first, a missing d/b/a certificate might have been seriously misleading. *Id.*

However, in *Ketterling v. Burger King Corp.*, we found a missing d/b/a certificate by itself was still insufficient to toll the statute of limitations. 152 Idaho 555, 556, 272 P.3d 527, 528 (2012). Ketterling fell in a snowy Burger King parking lot and, finding no d/b/a certificate associated with that Burger King, filed a claim against Burger King Corp. *Id.* HB Boys had a contract to manage the Burger King franchise but had not filed a Certificate of Assumed Business Name. *Id.* at 557, 272 P.3d at 529. After the statute of limitations had passed, Ketterling

8

moved to add HB Boys as a defendant. *Id.* The district court found that the late amendment did not relate back to a time before the statute of limitations had run. This Court agreed, finding "Ketterling's search of the Secretary of State's records was reasonable, but she clearly could have done more," including visiting the restaurant to ask who operated it, or contacting the health district to find out who had the license for the restaurant. *Id.* at 560–61, 272 P.3d 532–33. Other simple inquiries would have provided HB Boys' identity, and so we found the missing d/b/a certificate alone had not prevented Ketterling from naming the correct party. *Id.* at 561, 272 P.3d at 533.

*Ketterling* parallels what the district court held that Hollingsworth could have done here, including phoning health and welfare to ask about the hospital's license, or phoning the hospital to ask whether the hospital was governmental. While such an approach may seem consistent with our past rulings, this analysis mistakenly conflates the policy considerations underlying statutes of limitations with those underlying the ITCA. Further, it understates the confusion created here by the content of the corporate filings.

The ITCA's notice requirement is distinct from the statutes of limitations we have considered before. *Winn* and *Ketterling* both reflect our interest in assuring statutes of limitations protect defendants against delayed claims. Where simple inquiries would have revealed the correct party, we have declined to toll the statutes of limitations. However, the ITCA's notice requirement is different. The ITCA is essentially a waiver of sovereign immunity, with the purpose of providing "much needed relief to those suffering injury from the negligence of government employees." *Rees v. State, Dep't of Health & Welfare*, 143 Idaho 10, 19, 137 P.3d 397, 406 (2006) (quoting *United States v. Muniz,* 374 U.S. 150, 165 (1963)). To this end, we have previously held that "the ITCA is to be construed liberally, consistent with its purpose, and with a view to 'attaining substantial justice.' " *Id.*

The ITCA's notice requirement serves its purpose by (1) providing opportunity to resolve claims without incurring the expense of litigation, (2) prompting investigation into the cause of injury and the government's liability, and (3) allowing the government to prepare defenses. *CNW, LLC v. New Sweden Irrigation Dist.*, 161 Idaho 89, 91–92, 383 P.3d 1259, 1261–62 (2016) (quoting *Farber v. State of Idaho*, 102 Idaho 398, 401, 630 P.2d 685, 688 (1981)). We have "taken a 'liberal approach to interpreting the notice requirement of the ITCA' " to "avoid thwarting meritorious claims on nonmeritorious grounds." *Doe v. Durtschi*, 110 Idaho 466, 474,

9

716 P.2d 1238, 1246 (1986) (quoting *Farber*, 102 Idaho at 402, 630 P.2d at 689). Thus, looking through the ITCA's justice-oriented lens, we must then carefully review the circumstances to determine whether the content of Respondents' corporate filings were seriously misleading.

Here, the facts go far beyond just a missing d/b/a certificate. Instead, Respondents filed a Certificate of Assumed Business Name and Articles of Incorporation, which strongly suggested that Walter Knox Community Hospital, Inc., d/b/a Valor Health, was a private nonprofit corporation. They further reinforced its nongovernmental status by describing a corporate structure inconsistent with a county hospital. The district court concluded that the word "community" in the name of the hospital and its business filings should have tipped off Hollingsworth that the hospital was governmental. However, a corporation can choose almost any name it pleases and the term "community" is not in the government's exclusive domain. It could be just as persuasively argued that a modern, corporate sounding name like "Valor Health" is more indicative of a private corporate entity than a county-owned facility. Likewise, Respondents assert Hollingsworth might have noticed that upon dissolution, the corporation's assets were to be distributed to other nonprofit hospitals or to Gem County. Yet, it is well within reason that a dissolved nonprofit corporation might elect to distribute its remaining assets to other nonprofits or the public. Reason and fairness do not allow us to require plaintiffs bringing claims under the ITCA, where the goal is attaining substantial justice, to ignore the plain language of official governmental filings and instead search for murky clues of a hidden truth that might be uncovered by only the most perceptive individuals.

Additionally, we cannot fairly speculate as to whether further investigation would have actually led Hollingsworth to reach the proper conclusion. *Ketterling* emphasized a missing d/b/a certificate alone was not seriously misleading where other obvious and simple inquiries would have revealed the correct party. We acknowledge that Hollingsworth might have asked someone about the hospital who then would have told him it is owned by Gem County. However, in this action, Respondents themselves have made different representations at different times concerning the legal status of Walter Knox Community Hospital, Inc. Even the hospital's own CEO mistakenly stated under oath that Walter Knox Community Hospital was only an on-paper corporate entity and not the county hospital. With the legal ground upon which Respondents have stood in this case shifting—even while this appeal has been pending—we cannot conclude

10

with confidence that further inquiry with hospital staff, let alone its CEO, would have revealed the correct answer to Hollingsworth in a timely manner.

The district court determined that Hollingsworth lacked due diligence in failing to determine the hospital was a political subdivision, subject to the notice requirements of the ITCA. However, considering both the ITCA's purpose and the County's misleading filings with the Secretary of State, we are persuaded Hollingsworth was entitled to rely upon the hospital's corporate filings and due diligence did not require him to look beyond the public record. Thus, under the unique circumstances presented here, we hold that the district court erred in granting summary judgment as a matter of law. The record establishes Hollingsworth acted with due diligence in attempting to comply with the ITCA because he was actively misled about the true nature of Respondents' governmental status by its own business filings with the Secretary of State.

## B. Equitable considerations bar Valor Health from claiming the protections of the ITCA.

Hollingsworth argues that the equitable remedies of either equitable estoppel or quasi-estoppel provide a remedy that relieves him from the notice requirements of the ITCA. This Court has previously noted that there are situations where it is appropriate to apply equitable remedies against a state agency:

> Although estoppel is generally not applicable to state agencies acting in a sovereign or governmental capacity, *Sagewillow, Inc. v. Idaho Dep't of Water Res.,* 138 Idaho 831, 845, 70 P.3d 669, 683 (2003), it may apply where required by notions of justice and fair play. *Brandt v. State,* 126 Idaho 101, 105, 878 P.2d 800, 805 (Ct.App.1994). *See also City of Sandpoint v. Sandpoint Ind. Hwy. Dist.,* 126 Idaho 145, 151, 879 P.2d 1078, 1084 (1994) (holding that estoppel may apply against a highway district "in order to prevent manifest injustice"). Still, in order to state a claim for promissory, equitable, and quasi-estoppel, a plaintiff must at least allege, among other things, a promise or representation by the party to be estopped. … *Ogden v. Griffith,* 149 Idaho 489, 495, 236 P.3d 1249, 1255 (2010) (Equitable estoppel requires "a false representation or concealment of a material fact."); *Mortensen v. Stewart Title Guar. Co.,* 149 Idaho 437, 443, 235 P.3d 387, 393 (2010) (Quasi-estoppel involves a party taking "a different position than his or her original position.").

*Idaho Wool Growers Ass'n, Inc. v. State*, 154 Idaho 716, 723, 302 P.3d 341, 348 (2012). Thus, we must determine whether "notions of justice and fair play" demand that the principles of equitable estoppel or quasi estoppel be applied to the facts of this case. *Id*.

11

### 1. Equitable estoppel does not apply.

Hollingsworth argues equitable estoppel is appropriate because he relied on the d/b/a certificate, which stated Valor Health was actually the nonprofit corporation Walter Knox Community Hospital, Inc., and did not indicate that Valor Health is owned by Gem County.

Equitable estoppel has four elements:

> 1) there must be a false representation or concealment of a material fact made with actual or constructive knowledge of the truth; 2) the party asserting estoppel did not and could not have discovered the truth; 3) there was intent that the misrepresentation be relied upon; and 4) the party asserting estoppel relied upon the misrepresentation or concealment to his or her prejudice.

*Sorensen v. Saint Alphonsus Reg'l Med. Ctr., Inc.*, 141 Idaho 754, 759, 118 P.3d 86, 91 (2005). Equitable estoppel does not extend or toll a notice period; instead, it prevents a defendant from "asserting the statute of limitations as a defense for a reasonable time after the party asserting estoppel discovers or reasonably could have discovered the truth." *City of McCall v. Buxton*, 146 Idaho 656, 663, 201 P.3d 629, 636 (2009).

While it appears that the first, third, and fourth elements of equitable estoppel apply here, we cannot find that the second element—"the party asserting estoppel did not and could not have discovered the truth"—has been established. Although we previously concluded that Hollingsworth acted with "due diligence" in relying on the corporate filings of the hospital in determining its status under the ITCA, this is not the same standard required for equitable estoppel to apply. Just because Hollingsworth acted with reasonable diligence in relying upon the corporate filings of Valor Health does not mean that Hollingsworth "could not have discovered the truth." Equitable estoppel encompasses a higher standard than due diligence. Although not required under a due diligence standard, further investigation by Hollingsworth could have eventually revealed the true governmental nature of Respondents. Therefore, because we cannot conclude that this was an undiscoverable truth, equitable estoppel does not apply.

### 2. Quasi-estoppel precludes Valor Health from asserting the notice requirements of the ITCA as a defense.

Hollingsworth also contends that because Respondents changed their position from representing themselves as a corporate entity to representing themselves as a governmental hospital, this disadvantaged Hollingsworth, thereby making quasi-estoppel applicable. We agree quasi-estoppel is an appropriate remedy.

12

Quasi-estoppel prevents a party from changing its legal position and, as a result, gaining an unconscionable advantage or imposing an unconscionable disadvantage over another. *Garner v. Bartschi*, 139 Idaho 430, 437, 80 P.3d 1031, 1038 (2003). Unlike equitable estoppel, quasi-estoppel does not require an undiscoverable falsehood, and it requires neither misrepresentation by one party nor reliance by the other. *Id.* Instead, quasi-estoppel applies where:

> (1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 136, 456 P.3d 201, 215 (2019), *reh'g denied* (Jan. 30, 2020) (quoting *Keybank Nat'l Ass'n v. PAL I, LLC*, 155 Idaho 287, 294, 311 P.3d 299, 306 (2013)).

Here, Respondents changed their position by publicly holding out Walter Knox Community Hospital, Inc., d/b/a Valor Health as a private corporation in their business filings, and then later asserting its status as a governmental entity when sued. It does not matter whether Respondents intended to mislead anyone by the nature of its business filings; those filings reasonably led Hollingsworth to believe the hospital was a private corporation and, thus, to miss the ITCA notice deadline to Respondents' benefit. This makes the doctrine of quasi-estoppel applicable. Respondents gained an unfair advantage while unconscionably disadvantaging Hollingsworth.

For these reasons, we hold that the doctrine of quasi-estoppel applies and conclude that the district court erred in finding Respondents were entitled to summary judgment as a matter of law. Accordingly, we remand the case to the district court to proceed with Hollingsworth's claims on the merits.

## C. We need not consider Hollingsworth's argument that the prelitigation hearing application provided actual notice.

In the alternative, Hollingsworth argues the prelitigation hearing application he submitted for the medical malpractice screening process, which was then forwarded by the Idaho State Board of Medicine to Valor Health's CEO and counsel, provided actual notice to Respondents. He asserts that this satisfied the ITCA notice requirement. Similar arguments have been previously rejected by this Court and the Court of Appeals. *See Foster v. Kootenai Medical*

13

*Center*, 143 Idaho 425, 146 P.3d 691 (Ct. App. 2006) (holding a Prelitigation Hearing Application forwarded by the Idaho State Board of Medicine to a relevant party did not also satisfy the ITCA's notice requirement); *Mitchell v. Bingham Memorial Hospital*, 130 Idaho 420, 425, 942 P.2d 544, 549 (1997) (finding "without merit" the argument that notice requirements for the prelitigation hearing pre-empt the notice requirements for the ITCA); *Blass v. County of Twin Falls*, 132 Idaho 451, 974 P.2d 503 (1999) (finding that, under the ITCA, a third party may submit a claim on the claimants behalf only if they have a subrogation interest in the claim). Inasmuch as we have decided this case on alternative grounds, we do not reconsider those decisions today.

## D. Attorney Fees and Costs on Appeal.

Respondents seek an award of attorney fees and costs on appeal, pursuant to Idaho Code section 6-918A and Idaho Appellate Rules 41 and 40(a); however, Respondents are not entitled to such an award because they did not prevail. On the other hand, although Hollingsworth did not seek attorney fees in his initial brief on appeal, he now requests attorney fees in his reply brief pursuant to the same authorities cited by Respondents. Hollingsworth points the Court to Respondents' change of position on appeal concerning a dispositive fact—that "Plaintiffs correctly identified Walter Knox Community Hospital, Inc.[,] d/b/a Valor Health as a defendant in this case"—and argues that if this fact had been admitted in the proceedings below, the district court likely would not have granted summary judgment in Respondents' favor. We agree that under the unique circumstances of this case, Hollingsworth should be afforded an opportunity to have his request for attorney fees on appeal considered.

The Idaho Appellate Rules require a party seeking attorney fees to make and support such a claim in their initial briefing; however, the rules allow this Court some flexibility:

> Any party seeking attorney fees on appeal must assert such a claim as an issue presented on appeal in the first appellate brief filed by such party as provided by Rules 35(a)(5) and 35(b)(5); provided, however, *the Supreme Court may permit a later claim for attorney fees under such conditions as it deems appropriate.*

I.A.R. 41(a) (emphasis added). In this case, Hollingsworth did not seek attorney fees in his initial brief because the conditions supporting such a request did not exist. However, on appeal, after receipt of Respondents' brief, a basis for attorney fees existed that was not present before. Namely, Respondents attempted to "clarify" their position by conceding that the corporation is the hospital's business identity. This does not square with its earlier narrative of how the

14

corporate entity came into being, nor does it align with the affidavit from Valor Health's CEO, asserting the hospital and corporation were not and never have been the same thing. It appears that until Respondents filed their brief on appeal, Respondents had yet to pin down the truth about the legal status of Walter Knox Community Hospital, Inc. Therefore, it is appropriate to consider Hollingsworth's request for attorney fees because the basis for the request did not exist when he filed his opening brief on appeal.

Although we have agreed to consider Hollingsworth's request for attorney fees, he must still comply with the standard set forth in Idaho Code section 6-918A for determining whether attorney fees should be awarded under the ITCA:

> At the time and in the manner provided for fixing costs in civil actions, and at the discretion of the trial court, appropriate and reasonable attorney fees may be awarded to the claimant, the governmental entity or the employee of such governmental entity, as costs, in actions under this act, upon petition therefor and a showing, *by clear and convincing evidence*, that the party against whom or which such award is sought was guilty of *bad faith* in the commencement, conduct, maintenance or defense of the action. …

Idaho Code Ann. § 6-918A.

Notwithstanding Respondents' troubling change of position, we ultimately conclude that Hollingsworth is not entitled to recover attorney fees. The standard in section 6-918A is a high bar, requiring a finding of bad faith by clear and convincing evidence. The record demonstrates that Respondent's change in position was more likely than not the result of confusion by the Respondents as to the legal effect of their actions, and an incorrect legal analysis by their attorneys handling the case below. Although the change of position is troubling, we cannot find by clear and convincing evidence it was an intentional act of bad faith on the part of Respondents. Indeed, had Respondents not made this damaging concession when they did, the outcome of this appeal might have been different. Due to their candor in bringing this error to our attention, we will not punish Respondents by imposing attorney fees. Accordingly, although Hollingsworth is entitled to costs on appeal, each party will bear their own respective attorney fees.

## IV. CONCLUSION

We conclude the district court erred in holding Hollingsworth did not exercise due diligence by relying on the corporate filings associated with Walter Knox Community Hospital, Inc., d/b/a Valor Health to determine the named defendant was not a governmental entity subject

to the ITCA. Additionally, we conclude the doctrine of quasi-estoppel applies, thereby entitling Hollingsworth to proceed on the merits of his claims. Therefore, we reverse the district court's summary judgment order and remand the case for further proceedings. Costs on appeal are awarded to Hollingsworth pursuant to I.A.R. 40.

Chief Justice BURDICK, Justices BEVAN, STEGNER and Justice Pro Tem MELANSON **CONCUR.**